Francis LACINA, David Galbraith, Bill Knight, George Craig, Ted Edwards, Charles Beeson, Donald Evans, Robert Beck, Lou Resinger, Andrew Rogers, Buck Germany, Dan Kelley, Marvin Gates, Wilburt Bond, William Gonzales, Lester Dixon, Frank Matney, and Rick Bernas, Plaintiffs-Appellants,

and

Petersen & Ferguson, Appellant,

v.

G–K TRUCKING; General Cable; Penn-Central Corp.; G–K Technologies; Eastern Carriers; and Robert Jensen, Defendants-Appellees.

No. 85–5728.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1986.

Decided Oct. 21, 1986.

As Amended Dec. 30, 1986.

[redacted]

Peter J. Ferguson, Santa Ana, Cal., for plaintiffs-appellants.

David Cathcart, Newport Beach, Cal., for defendants-appellees.

[redacted]

Before KENNEDY, BEEZER and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Plaintiffs-appellants, employees of GK Trucking, appeal from the district court's award of summary judgment in favor of defendant-appellee GK Trucking. Plaintiffs' counsel, Peterson & Ferguson, appeals from the imposition of a $1,000 sanction. We affirm the grant of summary judgment and reverse the $1,000 sanction imposed on counsel.

I

Plaintiffs brought this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (section 301). Plaintiffs claim that GK Trucking violated the terms of the 1979–82 National Master Freight Agreement and two riders to the agreement by closing its Montebello, California terminal. The February 2, 1981 "Concessions Rider" gave GK Trucking the right to maintain a separate terminal which paid lower wages, required GK Trucking to keep the Montebello terminal open, and allowed GK Trucking to provide work through the second terminal only if all Montebello terminal employees were working. The July 27, 1981 "Systems 99 Rider" provided that GK Trucking would not reduce the number of employees at the Montebello terminal absent economic necessity.

In October and November of 1981, GK Trucking laid off eleven employees at the Montebello terminal. The union thereupon filed a grievance on behalf of these employees. In March of 1982, the Montebello terminal employees refused further concessions, and the Montebello facility was closed on April 16, 1982. No grievance regarding the closing of the Montebello terminal was filed. On November 10, 1982, the grievance of the eleven laid-off employees was decided in favor of GK Trucking.

In this action, the district court granted summary judgment in favor of GK Trucking on the basis of the relevant statute of limitations, finding that plaintiffs knew or should have known, on or before June 3, 1982, that the union was not going to proceed with a grievance in regard to the Montebello closing. The district court also imposed a $1,000 sanction on plaintiffs' counsel, finding that he violated Fed.R. Civ.P. 11.

II

[redacted] We review the district court's grant of summary judgment *de novo, Gallon v. Levin Metals Corp.,* 779 F.2d 1439, 1440 (9th Cir.1986), and affirm.

The six-month statute of limitations for unfair labor practices contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies in section 301 actions. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169–71, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983).[1] Plaintiffs' cause of action was

1. Petitioners argue that retroactive application of *Del Costello* is unwarranted in this case. But petitioners correctly state that retroactive application of *Del Costello* is proper when it lengthens the period for filing. *See, e.g., Kelley v. International Bortherhood of Elec. Workers,* 803 F.2d 516, 518 (9th Cir.1986); *Aragon v. Federated Dep't Stores, Inc.,* 750 F.2d 1447, 1451 (9th Cir.1986); *Glover v. United Grocers, Inc.,* 746 F.2d 1380, 1382 (9th Cir.1984); *Edwards v. Teamsters Local Union No. 36,* 719 F.2d 1036, 1040 (9th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). *See also Acri v. International Assoc. of Machinists & Aerospace Workers District Lodge 115,* 781 F.2d 1393, 1396 (9th Cir.1986); *McNaughton v. Dillingham Corp.,* 722 F.2d 1459, 1460–62 (9th Cir.1984) (*McNaughton II)* (denying petition for rehearing). This is

filed December 3, 1982,[2] so we must deter-
or before June 3, 1982.

A section 301 cause of action for failure
to pursue a grievance accrues when the
plaintiff knew or should have known that
the union was not going to pursue a griev-
ance on his behalf. *Galindo v. Stoody Co.,*
793 F.2d 1502, 1509 (9th Cir.1986). We
agree with the district court's conclusion
that, on or before June 3, 1982, as a matter
of law, plaintiffs knew or should have
known of the union's decision not to pursue
a grievance regarding the Montebello ter-
minal closing.

By letter dated May 17, 1982, the union
informed Walter Bache, the union steward
for the Montebello terminal, as follows:

> This is in reply to your letter regarding
> negotiations and closure of the G–K
> Trucking operation.
>
> This Local Union held two meeting [sic]
> with the drivers and submitted the Com-
> pany's final proposal. Both times the
> proposal was voted down by the drivers.
> The Company put in for a change of
> operations to close down their trucking
> operation. This was heard and approved
> by the Change of Operations Committee
> at the Joint Western Area Committee
> hearings held in San Diego last week.
> We reminded the Company they are still
> bound by the Agreement until its expira-
> tion date, and should any trucking opera-
> tion be resumed, our contract will apply.
> We are very sorry that nothing could be
> done to save the jobs of our members,

but as I stated above, the proposals were
voted down, and the Company simply
would not reconsider.

Bache testified at his deposition that he
contacted some plaintiffs regarding the
contents of the May 17 letter, and informed
others of the letter when they contacted
him. In the context of information avail-
able at that time and the lack of union
action prior to the letter, the letter was
strong evidence that the union was not
going to take further action regarding the
Montebello terminal closing.

Several plaintiffs testified at depositions
that, sometime between the Montebello ter-
minal closing on April 16, 1982 and early in
May of 1982, they became aware that the
union would not file a grievance on their
behalf in regard to the closing. Others
testified that they were not sure whether
the union was going to pursue a grievance
or not, or that they "believed" the union
was not going to take any action.

Under these circumstances, even if some
of the plaintiffs lacked actual knowledge
that the union was not going to file a
grievance over the Montebello terminal
closing, the district court correctly found
that all plaintiffs knew or should have
known, on or before June 3, 1982, that no
union action was forthcoming.[3] *See Galin-
do,* 793 F.2d at 1509. *See also Metz v.
Tootsie Roll Industries, Inc.,* 715 F.2d 299,
304 (7th Cir.1983) (considering what reason-
ably diligent plaintiff would have discover-
ed in determining accrual date), *cert. de-
nied,* 464 U.S. 1070, 104 S.Ct. 976, 79
L.Ed.2d 214 (1984).

---

precisely what happened in this case: The period
*was lengthened,* from 100 days (under state law
as mandated by *United Parcel Service, Inc. v.
Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d
732 (1981)) to six months. Petitioners arguments
against retroactive application of *Del Costello* are
thus without merit.

2. A law clerk for plaintiffs' counsel mistakenly
filed a complaint on behalf of plaintiffs on No-
vember 10, 1982. The complaint was received
and returned by the district court, but never
served on defendants. Relying on this court's
decision in *Loya v. Desert Sands Unified School
District,* 721 F.2d 279, 281 (9th Cir.1983), plain-
tiffs argue that the filed and rejected complaint
was "filed" for statute of limitation purposes.
We have since held, however, that a section 301
action must be filed *and served* within the six-

month limitations period. *Gallon v. Levin Met-
als Corp.,* 779 F.2d 1439, 1440–41 (9th Cir.1986),
*petition for cert. filed,* 54 U.S.L.W. 3763 (U.S.
May 7, 1986) (No. 85–1839). Because the No-
vember 10 complaint was never served, it does
not mark the date of the filing of plaintiffs'
action for purposes of the statute of limitations.

3. The grievance proceeding concerning the elev-
en laid-off employees does not affect accrual in
this case because that proceeding did not con-
cern the closing of the Montebello terminal.
*See Galindo,* 793 F.2d at 1510 n. 5. The layoffs
at issue took place in October and November of
1981, and the grievance was filed on December
9, 1981. Although the grievance sought "con-
tinuing relief," this cannot reasonably be con-
strued to include claims in regard to the closing
the Montebello terminal on April 16, 1982.

## III

 Because the facts which caused the district court to impose sanctions are not in dispute, we review the district court's conclusion that plaintiffs' counsel violated Fed. R.Civ.P. 11 *de novo, Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir. 1986), and reverse.

Rule 11 provides in pertinent part:

The signature of an attorney [on a pleading, motion, or other paper] ... constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Subjective bad faith is not an element of a Rule 11 violation, it is enough if the paper at issue lacks a basis in fact or a good faith argument in law, or needlessly increases litigation. *Zaldivar,* 780 F.2d at 830–32.

 Plaintiffs' counsel did not violate Rule 11 in filing the February 11, 1985 Supplemental Authority in Opposition to Defendant's Motion for Reconsideration. First, the November 10 filed and rejected complaint, attached as an exhibit to previous papers in opposition to defendants' motion to reconsider, provides the factual basis for counsel's argument. In the Supplemental Authority, plaintiffs' counsel specifically referred to the previous declaration of counsel, the rejected complaint, and their location in the record.

Second, plaintiffs' reliance on *Loya,* 721 F.2d at 281, for the proposition that the rejected November 10 complaint constituted a filing for statute of limitations purposes was then a good faith legal argument. At the time plaintiffs' Supplemental Authority was filed, we had not yet held that a section 301 complaint must be filed and served within the six-month limitations period. *See Gallon,* 779 F.2d at 1440–41.

Third, although the district court was initially confused by the November 10 date

in the Supplemental Authority, the matter was cleared up at oral argument. Thus, this is not a case in which a misstatement of fact has increased the costs of litigation to the opposing party. *See, e.g., In re National Student Marketing Litigation,* 78 F.R.D. 726, 731 & n. 13 (D.D.C.1978), *aff'd sub nom. Lipsig v. National Student Marketing Corp.,* 663 F.2d 178 (D.C.Cir. 1980). Moreover, there is no indication that the Supplemental Authority was filed for an improper purpose.

## IV

We therefore affirm the district court's grant of summary judgment in favor of GK Trucking but reverse the district court's imposition of sanctions against plaintiffs' counsel. All parties are to bear their own costs of appeal.

AFFIRMED IN PART, REVERSED IN PART.