**UNITED TRANSPORTATION UNION,
etc. et al., Plaintiffs-Appellants,**

v.

**FLORIDA EAST COAST RAILWAY
COMPANY etc.,
Defendant-Appellee.**

No. 77–1128.

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1978.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

PER CURIAM.

This is an action under the Railway Labor Act. The issue on appeal concerns the application of a Florida statute of limitations. For the reasons expressed in Judge Scott's district court opinion, which is reproduced below, we hold that the Florida statute of limitations does bar the plaintiff-appellant's action. We therefore affirm the judgment of the district court.

AFFIRMED.

## APPENDIX

### NO. 70–726 Civ–J
### ORDER AND OPINION

CHARLES R. SCOTT, District Judge.

This is a case involving alleged violation of the Railway Labor Act. 45 U.S.C. § 151 et seq. (Act). The United Transportation Union's claims against Florida East Coast Railway Company were originally asserted in a three count complaint filed herein August 7, 1970. An amended three count complaint was filed March 15, 1971. The case is presently before the Court on Defendant's motion for summary judgment as to all three counts of the amended complaint.[1]

The basis of Defendant's motion is that Plaintiff's recovery on all three counts of the amended complaint is barred by the statute of limitations. Defendant additionally asserts this Court lacks jurisdiction over count II of the amended complaint.

The record reveals there is no genuine issue of material fact. Rule 56 Federal Rules of Civil Procedure. The facts applicable to this case have been thoroughly developed in the numerous similar cases previously heard by this Court arising from

Thomas W. McAliley, Miami, Fla., Allan Milledge, Earl G. Gallop, Miami, Fla., for plaintiffs-appellants.

Erle Phillips, John B. Shepard, Atlanta, Ga., for defendant-appellee.

1. Motion for summary judgment was filed November 12, 1974. Oral argument was heard May 8, 1975.

the Florida East Coast Railway strike of 1963.[2]

Upon consideration of the facts, this Court finds that jurisdiction is proper as to count II of the amended complaint, but that recovery on all three counts is barred by the applicable statute of limitations. Summary judgment will, therefore, be granted for the Defendant.

In support of the above, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. The United Transportation Union (UTU) is a labor organization under the Railway Labor Act. The UTU is the successor labor organization to the Brotherhood of Railroad Trainmen, Order of Railroad Conductors and Brakemen and the Brotherhood of Locomotive Firemen and Enginemen. On January 23, 1963, and continuously thereafter until July 23, 1976[3], the UTU or its predecessor unions was the collective bargaining representative for certain classes and crafts of operating personnel employed by the Florida East Coast Railway Company

2. The Florida East Coast Railway Company (FEC) is a Florida corporation, engaged in interstate commerce as a railroad "carrier" as defined in Section 1, Railway Labor Act, 45 U.S.C. § 151, and is subject to the provisions of said Act.

3. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337. Venue is vested pursuant to 28 U.S.C. § 1391(c).

4. On January 23, 1963, a collective bargaining agreement governing rules, rates of pay and working conditions was in effect between plaintiff's predecessors and the FEC. On that date, a dispute over a wage increase prompted the non-operating unions to strike the railroad. Most of the operating personnel chose to honor the picket line and refused to work. The operations of the railroad were thereby shut down.

5. By February 3, 1963, the railroad resumed continuous operations. The FEC hired replacements and used supervisory personnel to fill the jobs of the strikers and the operating personnel honoring the picket lines. The contracts of employment between the FEC and the replacement personnel were on individual bases. The terms of employment varied considerably from the collective bargaining agreements then in effect.

6. Since February 4, 1963, except when specifically enjoined, the FEC has operated on the basis of the rules, rates of pay and working conditions agreed to by the replacement personnel.

7. On September 25, 1963, the FEC formally proposed to the unions—through the Section 6 "Notice" requirement of the Act (45 U.S.C. § 156)—a complete revision of the then existing collective bargaining agreements. The proposed revisions embodied the rules, rates of pay and working conditions under which the replacement personnel had been operating since February.

8. Negotiations between the plaintiff and defendant regarding the Section 6 notices proved fruitless. In October, 1963, however, the railroad apparently unilaterally implemented the new terms.

9. On the basis of the "status quo" requirement of 45 U.S.C. § 156, the unions sought and obtained injunctions from this Court. The railroad was enjoined from deviating from the collective bargaining agreements and was ordered to restore operations in compliance with them. The injunctions were issued because the procedures prescribed in the Railway Labor Act for settlement of such disputes had not been exhausted.

(a) *Brotherhood of Railroad Trainmen v. Florida E. C. Ry. Co.*, Case No. 64–40 Civ-J (M.D.Fla.), injunction issued March 2, 1964;

---

**2.** Citations to those cases are fully set forth in paragraph nine of this Court's Findings of Fact.

**3.** See attached Exhibit "A".

(b) *United States v. Florida E. C. Ry. Co.*, Case No. 64—107 Civ-J (M.D.Fla.), injunction issued October 30, 1964;

(c) *Brotherhood of Locomotive Engineers v. Florida E. C. Ry. Co.*, Case No. 64–239 Civ-J (M.D.Fla.), injunction issued November 5, 1964;

(d) *Order of Railroad Conductors and Brakemen and Brotherhood of Locomotive Firemen and Enginemen v. Florida E. C. Ry. Co.*, Case No. 64–237 Civ-J (M.D.Fla.), injunction issued January 6, 1965.

10. In each instance where the issuance of the preliminary injunction was appealed, the action of the trial court was affirmed.

(a) *Florida E. C. Ry. Co. v. Brotherhood of Railroad Trainmen of Florida*, 336 F.2d 172 (5th Cir. 1964), cert. den. 379 U.S. 990, 85 S.Ct. 703, 13 L.Ed.2d 611 (1965);

(b) *Florida E. C. Ry. Co. v. United States*, 348 F.2d 682 (5th Cir. 1965);

(c) *Florida E. C. Ry. Co. v. Brotherhood of Locomotive Engineers, et al.*, 362 F.2d 482 (5th Cir. 1966);

(d) *Brotherhood of Ry. and S. S. Clerks v. Florida E. C. Ry. Co.*, 384 U.S. 238, 86 S.Ct. 1420, 16 L.Ed.2d 501 (1966).

11. On occasion, the unions sought and obtained forced compliance with the injunctions through the contempt powers of the Court.

(a) Case No. 64–239 Civ-J (M.D.Fla.). Order to show cause issued September 24, 1965;

(b) Case No. 64–237 Civ-J (M.D.Fla.). Order to show cause issued February 8, 1966.

12. On August 19, 1964, the union requested the services of the National Mediation Board. On November 26, 1965, the railroad did likewise. The dispute was assigned to a mediator but he was unable to assist the parties in reaching a settlement. Arbitration not being mandatory, the Florida East Coast Railway declined to submit the dispute to arbitration.[4]

13. On March 22, 1966, the procedures of the Act having been exhausted, the National Mediation Board terminated its efforts. The parties were thus relegated to self-help to resolve their differences.

14. On April 24, 1966, the FEC put into effect the new terms of employment contemplated by the Section 6 notices of September 25, 1963. The union promptly struck. Since then the railroad has operated on the basis of the new terms. No settlement has ever been reached.

15. On January 29, 1968, Case No. 64–40 Civ-J (M.D.Fla.) was dismissed for mootness. On October 7, 1968, Case No. 64–237 Civ-J (M.D.Fla.) was dismissed for the same reason. At no time in either case was a claim made for monetary damages.

16. The complaint in this case was filed August 7, 1970—approximately four years and three months after the strike began.

## CONCLUSIONS OF LAW

1. *The legal doctrine of limitations is applicable.* Plaintiff asserts that since the relief sought in this case is strictly equitable in nature, the equitable doctrine of laches should be the sole bar to recovery. Plaintiff bases its assertion on *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1945). In *Holmberg*, holding that the statute of limitations was not applicable, the Supreme Court of the United States stated:

> The present case concerns not only a federally-created right but a federal right for which the sole remedy is in equity. *Id.* at page 395, 66 S.Ct. at page 584.

Plaintiff asserts that since only equitable relief is sought; since plaintiff has not slept on its rights; and since defendant has not been prejudiced by the delay, laches should not bar recovery.

Defendant, on the other hand, asserts the relief sought is both legal and equitable in nature and that equitable relief is barred when legal relief is barred. *Cope v. Ander-*

---

4. The unions were apparently agreeable to arbitration. Arbitration is not, however, required by the Act.

*son*, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); *Russell v. Todd*, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754 (1940); *Mizell v. North Broward Hosp. Dist.*, 427 F.2d 468 (5th Cir. 1970). This Court is of the opinion that both legal and equitable relief is sought and that, therefore, the statute of limitations bars both. The Court has not been directed to any case which specifically requires this holding. An analogy to civil rights cases, however, convinces the Court that such a result is appropriate.

The bar of limitations was applied to a claim brought for alleged violation of the Railway Labor Act in *Cato v. South Atlantic and Gulf Coast District of the International Longshoremen's Association*, 364 F.Supp. 489 (S.D.Tex.1973). In that case, although defendant City of Galveston had been found liable to certain employees in prior cases [5], the district court held that Cato's claim had not been timely filed. The United States Court of Appeals for the Fifth Circuit affirmed that holding by per curiam opinion. *Cato v. International Longshoremen's Association*, 485 F.2d 583 (5th Cir. 1973).

Unfortunately, neither opinion sets forth sufficient information to be of guidance to this Court. The District Court did not discuss why the statute of limitations was applicable. Furthermore, it is not clear what type of relief was sought or whether the limitation-laches distinction was ever raised.[6]

The Railway Labor Act, like other federal legislation, left to judicial determination the fashioning of remedial relief for violations of the Act. In *United Industrial Workers of the Seafarers International Union v. Board of Trustees of Galveston Wharves*, 400 F.2d 320 (5th Cir. 1968), (*Gal-*

*veston Wharves*), the Court of Appeals held for the first time that district courts have authority in fashioning such relief to require payment of backpay as compensatory damages for violation of the Railway Labor Act.[7] In making this holding, the Court drew analogy to the backpay remedy imposed by statute in the National Labor Relations Act. Galveston Wharves and the subsequent case of *Mungin v. Florida E. C. Ry. Co.*, 416 F.2d 1169 (5th Cir. 1969), form the basis of plaintiff's claims herein.

In *United States v. Georgia Power Company*, 474 F.2d 906 (5th Cir. 1973), the Court of Appeals for the Fifth Circuit considered the propriety of an award for backpay for violation of Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 U.S.C. § 2000e et seq. The Court stated:

> The Act, in authorizing courts to grant equitable relief . . ., expressly and impliedly includes the discretion to award back pay. Given this court's holding that '[a]n inextricable part of the restoration to prior [or lawful] status is the payment of back wages properly owing to the plaintiffs,' . . . it becomes apparent that this form of relief may not properly be viewed as a mere adjunct of some more basic equity. It is properly viewed as an integral part of the whole relief which seeks, not to punish the respondent but to compensate the victim of discrimination. [citations omitted]. *Id.* 921.

As in *Galveston Wharves*, the ultimate source for the propriety of awarding backpay in *Georgia Power* was the National Labor Relations Act. 29 U.S.C. § 160(c). 474 F.2d at 921 n. 19.

After finding that backpay was an appropriate form of relief the Court went on to

---

**5.** *United Industrial Workers of the Seafarers International Union v. Board of Trustees of Galveston Wharves*, 400 F.2d 320 (5th Cir. 1968).

**6.** Since 1938, the Courts have attempted to abolish the common law equity-law distinction. As can be seen by this case and other cases primarily involving the right to trial by jury, the efforts have not been completely successful.

**7.** 400 F.2d at 327.

"Admittedly, no case has been found where a federal court has awarded backpay as part of its enforcement of status quo in a labor dispute but given our role in such enforcement, and the peculiar necessity for inclusion of backpay as a sanction under the Act, we conclude that the Court possesses the power to include a backpay award in its order."

consider what limitations might bar such awards. Finding that it was not a case where the sole remedy was in equity, 474 F.2d at 923 n. 22, the Court held:

> Where a federal statute creates rights for which both equitable redress and monetary damages may be appropriate, the analogous state statute of limitations governs the recovery of damages. [citations omitted]. *Id.* at 923.

This Court sees no difference between the monetary damages sought in *Georgia Power Co.* and those sought in *Galveston Wharves* or this case. In both instances the Court drew upon the National Labor Relations Act as an analogous source for the propriety of the award. In each, the relief granted was an attempt to restore plaintiff to its rightful place. In Georgia Power Co. the Court held the statute of limitations applicable. In *Galveston Wharves* it did not address the question. This Court is of the opinion, however, that limitations are applicable to claims for money damages under the Railway Labor Act.

The finding that limitations applies does not preclude application of the doctrine of laches where appropriate.

2. *It is well established that when federal legislation creates rights without prescribing a period of limitation for their enforcement, the federal courts must borrow the appropriate limitation period from the state law of the state where the court sits.* International Union v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); White v. Padgett, 475 F.2d 79 (5th Cir. 1973); Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815 (5th Cir. 1972); United States v. Georgia Power Company, 474 F.2d 906 (5th Cir. 1973); Beard v. Stephens, 372 F.2d 685 (5th Cir. 1967); Cato v. South Atlantic and Gulf Coast District of International Longshoremen's Association, supra.

3. *To determine which state statute of limitation applies, the Court must follow a* two step process. First, the essential nature of the federal claim must be determined. Second, the state statute applicable to such claims must be determined. *McGuire v. Baker,* 421 F.2d 895 (5th Cir. 1970).

The gist of plaintiff's claim against defendant is that: from February 4, 1963, when the railroad resumed operations with replacement personnel; through the service of the Section 6 Notices in September, 1963, the negotiations thereafter, and the obtaining of the preliminary injunctions; until the resort to self-help in April, 1966, and continuously thereafter, the defendant has been guilty of flagrant violations of the Railway Labor Act and has operated in complete abrogation of the collective bargaining agreements in effect in 1963.

■ Count I of the amended complaint purports to be an action "arising under the Railway Labor Act." After setting forth the ways plaintiff's rights under the Act have been violated, plaintiff seeks relief: (1) enjoining the railroad from further violation of the Act; (2) restoring the status quo; and (3) granting restitution for monetary losses. As such the essential nature of plaintiff's claim is an alleged violation of rights created by statute. Florida Statute § 95.11(5)(a) is, therefore, applicable.[8] That section prescribes a three year limitation.

Count III of the amended complaint alleges essentially the same claim as count I. The only difference is the nature of the relief sought. Count III seeks compensatory damages. Florida Statute § 95.11(5)(a) is, therefore, also applicable to count III.

■ Count II of the amended complaint seeks compensatory damages for defendants abrogation of the collective bargaining agreements. Plaintiff labels the count as one for breach of written contracts. As strictly a breach of contract action, this Court might very well lack jurisdiction as asserted by defendant. *See, Andrews v.*

---

8. Florida Statute § 95.11(5)(a):

Actions other than those for the recovery of real property can only be commenced as follows:

(5) Within three years.—

    (a) An action upon a liability created by statute, other than a penalty or forfeiture.

*Louisville and Nashville R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Elgin, Joliet and Eastern Ry. Co. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). As this Court understands prior decisions of the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit, however, district courts do have jurisdiction over alleged abrogations of collective bargaining agreements.

In *Florida E. C. Ry. Co. v. Brotherhood of R. Trainmen,* Case No. 64-40 Civ-J (M.D. Fla.), the railroad sought approval by the district court for deviations from the status quo deemed necessary by the railroad in order to continue operations in the face of the strike. In its opinion affirming the lower court's action, the Court of Appeals stated:

> But when the machinery of industrial peace fails, the policy in all national labor legislation is to let loose the full economic power of each. On the side of labor, it is the cherished right to strike. On management, the right to operate, or at least the right to try to operate.
>
> .  .  .  .  .
>
> But this right of self-help is not a license for wholesale abrogation of the agreement. As the term implies, it is help which is reasonably needed to meet the impasse of a railroad desiring to run and unions unwilling to furnish workers.

336 F.2d 172, 181 (5th Cir. 1964). *See also, Railway Employees v. Florida E. C. Ry. Co.,* 384 U.S. 238, 86 S.Ct. 1420, 16 L.Ed.2d 501 (1966); and *Florida E. C. Ry. Co. v. United States,* 348 F.2d 682 (5th Cir. 1965). Thus, strike conditions do not free an employer to completely ignore an existing collective bargaining agreement. Since plaintiff has complained of defendant's conduct both before and after exhaustion of the Act procedures, the Court sees no reason for distinguishing of the jurisdiction question on that ground.

It remains for the Court to characterize the essential nature of plaintiff's claim in count II. The claim can be characterized several ways.

First, it can be characterized as an action upon a liability created by statute. As has already been mentioned, plaintiff's claim for money damages is based on *Galveston Wharves.* In that case the Court observed,

> .  .  . the employees here do *not* claim backpay for a breach of contract. Their claims arise out of a violation of the federal statute.

400 F.2d at 327. Thus the applicable state statute would be Florida Statute § 95.-11(5)(a).

Count II could also be characterized as an action for unpaid wages. In *United States v. Georgia Power Co., supra,* a recovery of back pay was sought for violation of Title VII of the Civil Rights Act of 1964. In that case the Court of Appeals held:

> Where federal laws create rights to backpay as part of general remedial relief, courts have generally applied the appropriate state statute of limitations governing actions for unpaid wages.

474 F.2d at 924. *See also, Blair v. Page Aircraft,* 467 F.2d 815 (5th Cir. 1972). Although the Civil Rights Act explicitly provides for the recovery of back pay while the Railway Labor Act does not, the characterization is a justifiable one. Thus characterized, the one year limitation of Florida Statute § 95.11(7)(b) would apply.[9]

The five year limitation of Florida Statutes § 95.11(3) regarding actions upon any contract founded upon an instrument in writing may apply to an action brought by the union for damages caused to the union itself but would not apply to actions brought for recovery of damages to the individual employees represented by the union. Actions for damages by employees for violations of their employment contracts

---

**9.** Florida Statutes § 95.11(7)(b):

Actions other than those for the recovery of real property can only be commenced as follows:

(7) Within one year.

(b) Suits for the recovery of wages, overtime, or damages and penalties accruing under laws respecting the payment of wages and overtime.

must be viewed as suits on oral contracts even though a written collective bargaining agreement is involved. *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Therefore, the three year limitation of Florida Statute § 95.11(5)(e) concerning actions upon contracts not founded upon an instrument of writing would apply.

This Court is of the opinion the most accurate characterization of count II is that it is an action upon a liability created by statute and thus the three year limitation of Florida Statute § 95.11(5)(a) controls. In addition, at no time in this case has plaintiff challenged defendant's characterization of the claims.

■ 4. *Defendant did not waive the statute of limitations as an affirmative defense.* Plaintiff's three count complaint was filed August 7, 1970. A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure was filed August 30, 1970. The motion raised the bar of the statute of limitations as to counts I and II of the complaint. Count III was challenged on other grounds.

On March 19, 1971, plaintiff filed an amended complaint. A motion to dismiss was filed on April 19, 1971. The counts of the complaint having been changed, the statute of limitations was raised this time as to counts II and III. Count I was challenged on other grounds.

On June 1, 1972, before a hearing on the motion was held, defendant supplemented its second motion to dismiss raising the statute of limitations as to counts I and III of the amended complaint. All motions were denied by this Court on June 14, 1972.

On September 11, 1972, defendant filed its answer to the amended complaint. Affirmative defenses six, seven, and eight raised the statute of limitations as to all counts of the complaint. Discovery proceeded by way of written interrogatories. On November 12, 1974, the limitation was raised by motion for summary judgment.

The bar of the statute of limitations is an affirmative defense. *White v. Padgett*, 475 F.2d 79 (5th Cir. 1973). It is most properly raised in an answer. *United States v. United States Casualty Co.*, 218 F.Supp. 653 (D.Del.1962); Rule 8(c) Federal Rules of Civil Procedure. If not pled, the defense is waived. *Bravman v. Bassett Furniture Industries, Inc.*, 64 F.R.D. 7 (E.D.Pa.1974). The defense can be raised by motion to dismiss where the complaint affirmatively shows that the claim is barred. *J. M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77 (5th Cir. 1962); *Josef's of Palm Beach, Inc. v. Southern Investment Co.*, 349 F.Supp. 1057 (S.D.Fla.1972).

In this case, the bar of the statute of limitations has been asserted on five separate occasions. In the answer and motion for summary judgment, the bar was raised as to all counts. The statute of limitations is not a defense that if not raised in a Rule 12(b)(6) motion is waived thereafter. *See,* Rule 12(g) and (h) of the Federal Rules of Civil Procedure.

5. *Defendant's actions did not give rise to a continuous claim. Plaintiff's claim accrued in April of 1966. The statute of limitations began to run at that time.*

■ On April 23, 1966, the procedures prescribed by the Railway Labor Act were officially exhausted. The next day the railroad implemented the new rates of pay, rules and working conditions of which plaintiff complains. Thereafter the union promptly struck. It is the opinion of this Court that at that time, plaintiff's claims against defendant were complete. If the Act was violated, it was violated then. If the collective bargaining agreement was abrogated, it was abrogated then. Neither the amended complaint nor the written interrogatories direct this Court's attention to any actions of defendant that occurred after April 24, 1966. *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953). The fact that defendant persisted in its position or that the effects of defendant's actions continued after the claim initially arose, does not make the claim a continuing one.

*Knowles v. Carson,* 419 F.2d 369 (5th Cir. 1969).

Plaintiff asserts that one of the ways Defendant violated the Act was through its failure to bargain in good faith. Plaintiff asserts that the duty to bargain in good faith is a continuing one and a failure to do so is a continuous violation. Be that as it may, it affords Plaintiff no relief. *Watkins v. Scott Paper Co.,* 350 F.2d 1159 (5th Cir. 1976); *Brotherhood of Locomotive Firemen, etc. v. Mitchell,* 190 F.2d 308 (5th Cir. 1951).

In the first instance it is doubtful whether this Court can grant Plaintiff any injunctive relief. Plaintiff has been decertified as the collective bargaining representative for the class of employees formerly represented by it. In addition, Plaintiff waited over four years to seek injunctive relief. To that extent Plaintiff is guilty of laches. The statute of limitations bars recovery of monetary damages.

This is not a case where a civil conspiracy is charged and the continuous nature of the conspiracy is periodically manifested by overt acts. Thus, *Crummer Co. v. Du Pont,* 223 F.2d 238 (5th Cir. 1955) is inapplicable.

6. *The running of the statute of limitations was not tolled for any period after 1966.*

■ Plaintiff asserts several different grounds for its claim that the running of the statute should be tolled. *First,* plaintiff asserts its claim for monetary damages could not be brought prior to the Court of Appeals decision in *Galveston Wharves.* Therefore, the time between April of 1966 and August of 1968, should not be counted against it. This Court does not agree. *Galveston Wharves* did not create a "cause of action." It merely expanded the scope of relief which could be awarded for violations of the Act. It is still the violation of the Act which gives rise to the claim or "cause of action." Plaintiff's reliance on the prior case law of *Louisville and Nashville Railroad Co. v. Brown,* 252 F.2d 149 (5th Cir. 1958) does not toll the running of the statute. While prior case law made it appear unlikely that money damages could be recovered, it did not preclude a prayer for money damages, nor bar any other relief plaintiff may have been entitled to. If the contrary were so, the *Galveston Wharves* case could not have been decided. Plaintiff's attempt to distinguish *Akers v. State Marine Lines, Inc.,* 344 F.2d 217 (5th Cir. 1965); and *Morales v. Moore-McCormack Lines, Inc.,* 208 F.2d 218 (5th Cir. 1953) on this point is unpersuasive.

■ The pendency of the prior cases involving plaintiff's predecessors and defendant did not toll the statute. Those suits were to obtain injunctive relief—to maintain the status quo until the procedures of the Act were exhausted. No other relief was sought. When the procedures of the Act were exhausted, those suits were no longer viable. Perhaps plaintiff could have, at some point, sought additional relief, but it did not do so. The suits were voluntarily dismissed in 1968. *Brotherhood of Railroad Trainmen v. Florida E. C. Ry. Co.,* Case No. 64–40 Civ-J (M.D.Fla.), January 29, 1968; *Order of Railroad Conductors and Brakemen and Brotherhood of Locomotive Firemen and Enginemen v. Florida E. C. Ry. Co.,* Case No. 64–237 Civ-J (M.D.Fla.), October 7, 1968. *See, Bomer v. Ribicoff,* 304 F.2d 427 (6th Cir. 1962); *Andry v. Maryland Casualty Co.,* 244 F.Supp. 143 (E.D.La.1965).

In both *Burnett v. New York Central R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) and *Mizell v. North Broward Hos. Dist.,* 427 F.2d 468 (5th Cir. 1970), the respective courts held that the statute of limitations should be tolled because plaintiffs' claims had been barred in such forums for several years before those forums were found to be inappropriate. In this case, Plaintiff can claim no such excuse. In fact, Plaintiff has asserted no reason for not having filed its claim sooner. Therefore, it is

ORDERED:

Motion for summary judgment is hereby granted.

DONE AND ORDERED at Jacksonville, Florida, this 13th day of December, 1976.